# U.S. District Court
## District of Columbia (Washington, DC)
## CIVIL DOCKET FOR CASE #: 1:12−cv−00282−BJR

FORRAS et al v. RAUF et al                                      Date Filed: 02/21/2012
Assigned to: Judge Barbara Jacobs Rothstein                    Date Terminated: 04/21/2014
Demand: $130,000,000                                           Jury Demand: Plaintiff
Cause: 28:1332 Diversity−Libel,Assault,Slander                 Nature of Suit: 320 Assault Libel
                                                               &Slander
                                                               Jurisdiction: Diversity

**Plaintiff**

**VINCENT FORRAS**                    represented by   **Larry E. Klayman**
                                                       LAW OFFICES OF LARRY KLAYMAN
                                                       2020 Pennsylvania Avenue, NW
                                                       Suite 345
                                                       Washington, DC 20006
                                                       (310) 595−0800
                                                       Fax: (310) 275−3276
                                                       Email: leklayman@gmail.com
                                                       *ATTORNEY TO BE NOTICED*

**Plaintiff**

**LARRY KLAYMAN**                     represented by   **Larry E. Klayman**
                                                       (See above for address)
                                                       *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**IMAM FEISAL ABDUL RAUF**            represented by   **Christopher G. Hoge**
                                                       CROWLEY, HOGE &FEIN, P.C.
                                                       1730 Rhode Island Avenue, NW
                                                       Suite 1015
                                                       Washington, DC 20036
                                                       (202) 483−2900
                                                       Fax: (202) 483−1365
                                                       Email: chfcgh@aol.com
                                                       *LEAD ATTORNEY*
                                                       *ATTORNEY TO BE NOTICED*

**Defendant**

**ADAM LEITMAN BAILEY**               represented by   **Christopher G. Hoge**
                                                       (See above for address)
                                                       *LEAD ATTORNEY*
                                                       *ATTORNEY TO BE NOTICED*

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 02/21/2012 | 1 | | COMPLAINT against ADAM LEITMAN BAILEY, IMAM FEISAL ABDUL RAUF ( Filing fee $ 350, receipt number 4616046185) filed by VINCENT FORRAS, LARRY KLAYMAN. (Attachments: # 1 Civil Cover Sheet)(dr) (Entered: 02/22/2012) |
| 02/21/2012 | | | Summons (2) Issued as to ADAM LEITMAN BAILEY, IMAM FEISAL ABDUL RAUF. (dr) (Entered: 02/22/2012) |
| 03/22/2012 | 2 | | MOTION to Stay *During Pendency of Similar DC Superior Court Action* by ADAM LEITMAN BAILEY (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3)(Hoge, Christopher) (Entered: 03/22/2012) |
| 04/23/2012 | 3 | | Memorandum in opposition to re 2 MOTION to Stay *During Pendency of Similar DC Superior Court Action* filed by LARRY KLAYMAN. (Attachments: # 1 Exhibit Superior Court Docket for Forras v. Rauf, # 2 Text of Proposed Order, # 3 Certificate of Service)(Klayman, Larry) (Entered: 04/23/2012) |
| 04/30/2012 | 4 | | REPLY to opposition to motion re 2 MOTION to Stay *During Pendency of Similar DC Superior Court Action* filed by ADAM LEITMAN BAILEY, IMAM FEISAL ABDUL RAUF. (Hoge, Christopher) (Entered: 04/30/2012) |
| 03/28/2013 | | | MINUTE ORDER: Defendant Bailey has moved to stay this action while proceedings in the Superior Court involving the same parties and controversy are pending. The plaintiffs, without seeking leave of court, filed an untimely opposition claiming that the proceedings in Superior Court are not pending and stand dismissed. It is hereby ORDERED that the motion to stay 2 be, and hereby is, GRANTED. This matter is STAYED AND ADMINISTRATIVELY CLOSED pending further order of the Court. It is further ORDERED that the parties file by April 12, 2013 a joint status report reflecting the status of plaintiffs' motion to dismiss filed in the Superior Court. The joint status report shall be accompanied by a proposed order. Issued by Judge Richard W. Roberts on 03/28/2013. (DCL) (Entered: 03/28/2013) |
| 04/12/2013 | 5 | | STATUS REPORT *Joint Report Pursuant to Order Dated March 28, 2013* by IMAM FEISAL ABDUL RAUF. (Hoge, Christopher) (Entered: 04/12/2013) |
| 05/13/2013 | 6 | | ENTERED IN ERROR.....MOTION to Dismiss *and For Attorneys' Fees* by ADAM LEITMAN BAILEY (Hoge, Christopher) Modified on 5/14/2013 (jf, ). (Entered: 05/13/2013) |
| 05/13/2013 | 7 | | ENTERED IN ERROR.....MOTION to Dismiss − *Memorandum of Law* by ADAM LEITMAN BAILEY (Attachments: # 1 Affidavit with Exhibits 1−6, # 2 Affidavit with Exhibits 1 − 12)(Hoge, Christopher) Modified on 5/14/2013 (jf, ). (Entered: 05/13/2013) |
| 05/14/2013 | | | NOTICE OF CORRECTED DOCKET ENTRY: Document Nos. re 7 MOTION to Dismiss − *Memorandum of Law,* 6 MOTION to Dismiss *and For Attorneys' Fees* was entered in error and counsel was instructed to refile said pleading as one complete filing. (jf, ) (Entered: 05/14/2013) |
| 05/15/2013 | 8 | | MOTION to Dismiss *and,* MOTION for Attorney Fees by ADAM LEITMAN BAILEY (Attachments: # 1 Memorandum in Support, # 2 Affidavit with Exhibits 1−12, # 3 Declaration with Exhibits 1−6)(Hoge, Christopher) |

| | | | |
|---|---|---|---|
| 06/03/2013 | 9 | | RESPONSE re 8 MOTION to Dismiss and MOTION for Attorney Fees filed by VINCENT FORRAS, LARRY KLAYMAN. (Attachments: # 1 Affidavit of Larry Klayman, # 2 Certificate of Service, # 3 Text of Proposed Order)(Klayman, Larry) (Entered: 06/03/2013) |
| 06/13/2013 | 10 | | REPLY to opposition to motion re 8 MOTION to Dismiss and MOTION for Attorney Fees Reply Memorandum of Law in Further Support of Motion to Dismiss and for Attorney Fees filed by ADAM LEITMAN BAILEY, IMAM FEISAL ABDUL RAUF. (Hoge, Christopher) (Entered: 06/13/2013) |
| 06/14/2013 | 11 | | Case reassigned by consent to Judge Barbara Jacobs Rothstein. Judge Richard W. Roberts no longer assigned to the case. (gt, ) (Entered: 06/14/2013) |
| 06/18/2013 | 12 | | STANDING ORDER. Signed by Judge Barbara Jacobs Rothstein on 06/18/2013. (lcbjr2, ) (Entered: 06/18/2013) |
| 06/19/2013 | | | MINUTE ORDER: Pursuant to the parties' 5 Joint Status Report, and in light of the dismissal without prejudice of the action in Superior Court and the request of Plaintiffs Vincent Forras and Larry Klayman and Defendant Adam Bailey that the stay on these proceedings be lifted, it is hereby ORDERED that the stay is lifted and the case be re−opened administratively. SO ORDERED. Signed by Judge Barbara Jacobs Rothstein on 6/19/2013. (lcbjr1) (Entered: 06/19/2013) |
| 04/18/2014 | 13 | 44 | ORDER granting 8 Defendants' Motion to Dismiss and setting deadlines for Defendants' Motion for Attorneys' Fees. SEE ORDER FOR DETAILS. Signed by Judge Barbara Jacobs Rothstein on 4/18/14.(lcbjr4) (Entered: 04/18/2014) |
| 04/18/2014 | 14 | 27 | MEMORANDUM OPINION. Signed by Judge Barbara Jacobs Rothstein on 4/18/19.(lcbjr4) (Entered: 04/18/2014) |
| 04/21/2014 | | | Set/Reset Deadlines: Documentation in support of motion for attorneys' fees due by 5/9/2014. Response to motion for attorneys' fees due by 5/23/2014 Reply due by 5/30/2014. (zmm, ) (Entered: 04/21/2014) |
| 05/09/2014 | 15 | | Supplemental MOTION for Attorney Fees by ADAM LEITMAN BAILEY (Attachments: # 1 Memorandum in Support, # 2 Declaration, # 3 Declaration, # 4 Exhibit 1, # 5 Exhibit 2, # 6 Exhibit 3, # 7 Exhibit 4, # 8 Exhibit 5, # 9 Exhibit 6)(Hoge, Christopher) (Entered: 05/09/2014) |
| 05/16/2014 | 16 | 4 | NOTICE OF APPEAL TO DC CIRCUIT COURT as to 13 Order on Motion to Dismiss, 14 Memorandum &Opinion by LARRY KLAYMAN. Filing fee $ 505, receipt number 0090−3718475. Fee Status: Fee Paid. Parties have been notified. (Attachments: # 1 Exhibit 1 −− Order granting dismissal, # 2 Exhibit 2 −− Memorandum opinion)(Klayman, Larry) (Entered: 05/16/2014) |

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

VINCENT FORRAS, et. al.,

               Plaintiffs,

vs.

IMAM FEISAL ABDUL RAUF, et. al.,

               Defendants.

**Case No. 1:12-cv-00282 -RWR**

## <u>NOTICE OF APPEAL</u>

NOTICE is hereby given that Plaintiffs Vincent Forras and Larry Klayman appeal to the

United States Court of Appeals for the District of Columbia Circuit from the Order and

Memorandum Opinion of this Court entered on April 18, 2014 (Docket Nos. 13,14)(Exhibit 1,2),

that ruled in favor of the Defendants and against Plaintiffs.

Dated:  May 16, 2014

                        Respectfully Submitted,

                         /s/ *Larry Klayman*
                        Larry Klayman, Esq.
                        D.C. Bar No. 334581
                        Klayman Law Firm
                        2020 Pennsylvania Ave. NW #345
                        Washington, DC 20006
                        Tel: (310) 595-0800
                        Email: leklayman@gmail.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 16th day of May, 2012 a true and correct copy of the foregoing Notice of Appeal (Case No. 1:12-cv-00282 -RWR ) was submitted electronically to the District Court of the District of Columbia and served via courier or electronic mail upon the following:

Via electronic service:

Christopher Hoge
1730 Rhode Island Avenue, N.W.
Suite 1015
Washington, DC 20036
chfcgh@aol.com

*Attorney for Defendant.*

                                Respectfully Submitted,


                                  /s/ *Larry Klayman*
                                Larry Klayman, Esq.
                                D.C. Bar No. 334581
                                Klayman Law Firm
                                2020 Pennsylvania Ave. NW #345
                                Washington, DC 20006
                                Tel: (310) 595-0800
                                Email: leklayman@gmail.com

# Exhibit 1

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| VINCENT FORRAS, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | CIVIL ACTION NO. 12-00282 (BJR) |
| ) | |
| v. ) | |
| ) | ORDER AND JUDGMENT |
| IMAM FEISAL ABDUL RAUF, *et al.* ) | |
| ) | |
| ) | |
| Defendants. ) | |
| ) | |

## <u>ORDER AND JUDGMENT GRANTING DEFENDANTS' MOTION TO DISMISS [8]</u>

For the reasons stated in the Court's Memorandum Opinion issued on this day, April 18,

2014, it is **HEREBY ORDERED** as follows:

(1) Defendants' Imam Feisal Abdul Rauf, *et al*. Motion to Dismiss [8] is **GRANTED**.

This case is **DISMISSED**.

(2) Defendants shall file documentation in support of their motion for attorney's fees no

later than May 9, 2014.

(3) Plaintiffs shall file their opposition to Defendants' motion for attorney's fees no later

than May 23, 2014.

(4) Defendants shall file their reply by May 30, 2014.

**SO ORDERED**

April 18, 2014

*Barbara J. Rothstein*

_____

BARBARA J.  ROTHSTEIN

UNITED STATES DISTRICT JUDGE

# Exhibit 2

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| VINCENT FORRAS, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | CIVIL ACTION NO. 12-00282 (BJR) |
| ) | |
| v. ) | |
| ) | MEMORANDUM OPINION |
| IMAM FEISAL ABDUL RAUF, *et al.* ) | GRANTING DEFENDANTS' |
| ) | SPECIAL MOTION TO DISMISS |
| ) | |
| Defendants. ) | |
| ) | |

Plaintiffs Larry Klayman and Vincent Forras bring this action against Defendants Imam

Feisal Abdul Rauf and Adam Leitman Bailey to recover damages for defamation, false light,

assault, and intentional infliction of emotional distress. Before the Court is Defendants' motion

to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1), (2), (3) and (6), and special

motion to dismiss under the District of Columbia Anti-Strategic Lawsuits Against Public

Participation Act of 2010 (the "Anti-SLAPP Act"), D.C. Code § 16-5501-5505. Defendants'

Memorandum of Law in Support of Motion to Dismiss and For Attorneys' Fees (hereinafter

"Mot. to Dismiss") at 3. Upon careful consideration of the parties briefs, submissions, and

exhibits, the Court concludes for the following reasons that Defendants' special motion to

dismiss must be granted.

## I. BACKGROUND

This litigation springs out of the efforts of Imam Rauf and members of the Islamic

community in New York City to build an Islamic community center on Park Place in lower

1

Manhattan, several blocks away from the site of the tragic destruction of the World Trade Center

in the September 11, 2001 attacks. Complaint ("Compl.") ¶¶ 3, 4.

## A. Plaintiffs' New York Supreme Court Action

On September 9, 2010, Plaintiff Forras, through his attorney Plaintiff Klayman, brought

an action in the Supreme Court of the State of New York, New York County against Defendant

Imam Rauf, alleging that Rauf's plan to construct the community center constituted nuisance,

intentional and negligent infliction of emotional distress, and assault. *See Forras v. Rauf*, No.

111970/2010, 2012 WL 7986872 (N.Y. Sup. Ct. Sept. 26, 2012) (the "New York Action").

Defendant Bailey represented Rauf.

Forras claims to have been a "first responder" to the terrorist attacks of September 11,

2001 and has made himself an outspoken public advocate on issues regarding the September 11

attacks, personally and through an organization he founded, the Gear Up Foundation. Compl. ¶

7.

Klayman is a "publically known civil rights and individual rights activist." *Id.* Personally

and through an organization he founded, Freedom Watch, he engages in political commentary

and institutes litigation on behalf of causes he advocates. *Id.* ¶ 2.

On October 7, 2010, Rauf (through his attorney, Bailey) filed a motion to dismiss the

New York Action. The "Memorandum of Law in Support of Motion to Dismiss" stated in

pertinent part:

> "Plaintiff's attorney, an infamous publicity hound, has found in Plaintiff the
> perfect victim, a man who could have comfortably concluded his life as a national
> hero, as [a] self-described 'first responder' to the greatest national tragedy since
> Pearl Harbor. Instead, thanks to this wholly frivolous lawsuit, he trades in his well
> deserved laurels for fifteen minutes of fame as a nationally recognized bigot."

2

"His cause and his case have all the rationality of one who would seek to tear down New York City's Chinatown as vengeance for Pearl Harbor on the theory that all Asians are alike."

"Plaintiff's view is simple. According to him, Islam equates with terrorism…."

"Yet because [] Plaintiff's revulsion for one particular religion has so poisoned his mind, he claims the right to use the power of the court…."

"He has elected to transform himself from America's poster child hero to America's Spokesman of Bigotry…"

"That the plaintiff in this suit finds Islam unacceptable to him personally is simply irrelevant to the protection which Islam is entitled under the First Amendment…"

"… we find that Plaintiff has nothing to offer but his bigoted assumption that all Muslims approve terrorism…"

*Id.* ¶ 9. Bailey submitted an affidavit in the New York Action, which stated:

 "I am an American and profoundly proud to be a citizen of the greatest most diversely embracing nation the planet earth has ever had in all of its recorded history."

"I am a Jew and profoundly proud to adhere to the nation that brought to Western Civilization the commands to love one's neighbor as oneself and not to oppress the foreigner for we were once strangers in another land."

"I will not let the right to the free exercise of religion be confined by narrowness of vision and I will not let the right to erect a house of prayer to be torn down by blind bigotry."

"When in the days following an analogous atrocity in 1941 our people marshaled their will and marched off, nobody was an American of this type. We were all united under a single banner pledged to eradicate the very kind of religious intolerance we see in Plaintiff, represented in those years by the Third Reich and those aligned with it."

*Id.* ¶ 10.

On October 12, 2010, the New York Post reported on the motion to dismiss in an article

entitled "*Anti-Mosque Lawsuit Slammed as Bigotry*." *Id.* ¶ 11; Annie Karni, *Anti-Mosque*

*Lawsuit Slammed as Bigotry*, N.Y. Post, Oct. 12, 2010. The article quoted the Defendants'

3

statement in their dismissal motion that the New York Action was "motivated by 'blind

bigotry.'" Affidavit of Larry Klayman in Support of Plaintiff's Opposition to Defendants'

Motion to Dismiss and For Attorneys Fees, Exhibit 1.

On January 2, 2011, Klayman cross-motioned for sanctions, objecting to the language of

the dismissal motion and citing the New York Post article. On April 5, 2011, the Honorable Lucy

Billings orally denied the sanctions motion because Defendants' "controversial statements" were

"related to their litigation." Declaration of Adam Leitman Bailey in Support of Defendant's

Motion to Dismiss and for Attorneys' Fees (hereinafter "Bailey Dec."), Exhibit 5.

On September 26, 2012, Justice Billings granted Defendants' motion to dismiss the

action for failure to state a claim. *Forras*, 2012 WL 7986872.


## B. Plaintiffs' D.C. Superior Court Action

On October 11, 2011—after the court in the New York Action orally denied Klayman's

motion for sanctions, but before the court granted Defendants' motion for dismissal—Klayman

and Forras filed a complaint against Rauf and Bailey in the District of Columbia Superior Court.

*See Vincent Forras & Larry Klayman v. Iman Feisal Abdul Rauf & Adam Leitman Bailey*, 2011

CA 0008122 B (D.C. Super. Aug. 7, 2012) (the "D.C. Superior Court Action"). Forras and

Klayman sought to recover damages for defamation, false light, assault, and intentional infliction

of emotional distress stemming from the statements Defendants made in their motion to dismiss

the New York Action, and the subsequent partial publication of those statements in the New

York Post. Declaration of Christopher G. Hoge in Support of Defendant's Motion to Dismiss and

For Attorneys' Fees, Exhibit 2.

4

On February 21, 2012, Plaintiffs, after having been granted three extensions of time by the Superior Court, commenced the present action in this Court and filed a Notice of Dismissal in the Superior Court. *Id.*, Exhibit 5. Plaintiffs explained that they wanted to take advantage of a recent federal court decision, *3M v. Boulter*, 842 F. Supp. 2d 85, 93-111 (D.D.C. 2012), which declined to apply the Anti-SLAPP Act to federal diversity cases. *Id.*

## C. The Present Action

Plaintiffs' Complaint in the instant case is identical in substance to the D.C. Superior Court Action complaint. Plaintiffs allege defamation, false light, assault, and intentional infliction of emotional distress stemming from the statements Defendants made in their motion to dismiss the New York Action, and the subsequent partial publication of those statements in the New York Post. Compl. ¶¶ 1, 8-10.

Defendants present a mélange of reasons why this case should be dismissed. They have filed a motion to dismiss under Rules 12(b)(1), (2), (3) and (6) and a special motion to dismiss under the Anti-SLAPP Act, which authorizes dismissal where a defendant shows that the claims at issue arise from an act in furtherance of the right of advocacy on issues of public interest.[1] The Court will resist the temptation to deal with all of Defendants arguments and will instead focus on Defendants' Anti-SLAPP Act and statute of limitations arguments. Mot. to Dismiss at 3. Because the Anti–SLAPP Act instructs courts to address special motions to dismiss on an expedited basis, *see* D.C. Code § 16–5502(d), the Court gives that motion priority and will address it first.

---

[1] Although D.C. Code § 16-5502 provides that a special motion to dismiss should be filed within forty-five days of the service of the claim, here Defendants moved promptly to stay this action because of the pendency of the Superior Court Action. As such, considering the circumstances under which the action was brought, the time to file the special motion to dismiss is equitably tolled and this motion is considered timely.

## II. SPECIAL MOTION TO DISMISS UNDER THE ANTI-SLAAP ACT

### A. Applicability of the Anti–SLAPP Act in Federal Diversity Actions

As a threshold matter, Plaintiffs argue that the Anti–SLAPP Act's special motion to dismiss provisions do not apply in federal proceedings where, as here, the court's jurisdiction is based on diversity. *See Erie v. Tompkins*, 304 U.S. 64, 58 (1938) (federal courts sitting in diversity must apply state substantive laws and federal procedural laws); *see also* Compl. ¶ 1 (invoking the Court's diversity jurisdiction). Plaintiffs rely exclusively on *3M Co. v. Boulter*. In that case the Court held that the Anti–SLAPP Act "squarely attempts to answer the same question that [Federal Rules of Civil Procedure] 12 and 56 cover and, therefore, cannot be applied in a federal court sitting in diversity." 842 F. Supp. 2d 85, 102 (D.D.C. 2012) (Wilkins, J.).

While thoroughly reasoned, *3M Co.* conflicts with the weight of authority. Indeed, three Courts of Appeals have deemed it appropriate to enforce state anti-SLAPP laws in diversity actions, finding no conflict between those statutes' special motion to dismiss provisions and Federal Rules of Civil Procedure 12 and 56. *See Godin v. Schencks,* 629 F.3d 79, 81 (1st Cir. 2010); *U.S. ex rel. Newsham v. Lockheed Missiles & Space Co.,* 190 F.3d 963, 973 (9th Cir. 1999); *Henry v. Lake Charles Am. Press, LLC,* 566 F.3d 164, 169 (5th Cir. 2009) (summarily adopting *Newsham's* reasoning).

In *Sherrod v. Breitbart*, a D.C. District Court case decided after *3M Co.*, the court held that the Anti-SLAPP Act "is substantive—or at the very least, has substantive consequences" and thus is applicable in federal court. 843 F. Supp. 2d 83, 85 (D.D.C. 2012) (Leon, J.) *aff'd on other grounds* 720 F.3d 932 (D.C. Cir. 2013). In *Sherrod*, the plaintiff—former Georgia State Director

6

for Rural Development for the United States Department of Agriculture— brought an action against the defendants—Internet bloggers Andrew Breitbart and Larry O'Connor—asserting claims for defamation, false light, and intentional infliction of emotional distress, which the defendants moved to dismiss under the Anti–SLAPP Act. *Sherrod*, 843 F. Supp. 2d at 83-84. The Honorable Judge Leon examined the legislative history of the Anti-SLAPP Act and found that the intent was "to create new substantive rights for defendants in SLAPP suits." *Id.* at 85. "'Bill 18–893, the Anti–SLAPP of 2010, incorporates substantive rights with regard to a defendant's ability to fend off lawsuits filed by one side of a political or public policy debate aimed to punish or prevent the expression of opposing points of view.'" *Id.* (quoting Council on the District of Columbia Committee on Public Safety and the Judiciary, Report on Bill 18–893, Anti–SLAPP Act of 2010 (Nov. 18, 2010) ("Comm. Report") at 1). In addition, since *3M Co.* three other D.C. District Court judges have found that the Anti-SLAPP Act applies to diversity actions in federal court. *See Boley v. Atl. Monthly Grp.,* 950 F. Supp. 2d 249, 254 (D.D.C. 2013) (Walton, J.) (finding the Courts of Appeals cases persuasive and adopting their reasoning); *Farah v. Esquire Magazine, Inc.,* 863 F. Supp. 2d 29, 36  n. 10 (D.D.C. 2012) (Collyer, J.) *aff'd sub nom. Farah v. Esquire Magazine,* 736 F.3d 528 (D.C. Cir. 2013) ("it was certainly the intent of the D.C. Council and the effect of the law—dismissal on the merits—to have substantive consequences"); *Abbas v. Foreign Policy Grp., LLC*, CV 12-1565 (EGS), 2013 WL 5410410 *5 (D.D.C. Sept. 27, 2013) (Sullivan, J.) (same).

Finding the Courts of Appeals cases and the recent D.C. District Court cases persuasive, the Court concludes that the Anti-SLAPP Act empowers defendants with the substantive right to fend off SLAPP lawsuits. Therefore the Court will apply the Anti-SLAPP Act's special motion to dismiss provisions in this case.

7

**B. The Anti-SLAPP Act**

The subsection of the Anti–SLAPP Act governing special motions to dismiss provides in

pertinent part:

> (a) A party may file a special motion to dismiss any claim arising from an act in furtherance of the right of advocacy on issues of public interest within 45 days after service of the claim.
>
> (b) If a party filing a special motion to dismiss under this section makes a prima facie showing that the claim at issue arises from an act in furtherance of the right of advocacy on issues of public interest, then the motion shall be granted unless the responding party demonstrates that the claim is likely to succeed on the merits, in which case the motion shall be denied.

D.C.Code § 16–5502(a)–(b).

The "broad" protections afforded by the Act "follow[ ] 'the lead of other jurisdictions,

which have similarly extended absolute or qualified immunity to individuals engaged in

protected actions'" by enacting anti-SLAPP laws. *Farah,* 863 F. Supp. 2d at 36 (quoting the

Comm. Report at 4). These statutes, like the District of Columbia's Anti–SLAPP Act, reflect a

legislative judgment that

> SLAPPs ... have been increasingly utilized over the past two decades as a means to muzzle speech or efforts to petition the government on issues of public interest. Such cases are often without merit, but achieve their filer's intention of punishing or preventing opposing points of view, resulting in a chilling effect on the exercise of constitutionally protected rights. Further, defendants of a SLAPP must dedicate a substantial amount of money, time, and legal resources. The impact is not limited to named defendants' willingness to speak out, but prevents others from voicing concerns as well.

*Boley*, 950 F. Supp. 2d at 255 (quoting Comm. Report at 1) (internal citations omitted).

The Anti–SLAPP Act seeks to address these concerns "by incorporating substantive

rights that allow a defendant to more expeditiously, and more equitably, dispense of a SLAPP."

Comm. Report at 1.

8

In construing the Anti–SLAPP Act, this Court unfortunately has no guidance from the D.C. Court of Appeals, which, to date, has not issued a published opinion interpreting the statute. Where, as here, "the substantive law of the forum state is uncertain or ambiguous, the job of the federal courts is carefully to predict how the highest court of the forum state would resolve the uncertainty or ambiguity." *Travelers Ins. Co. v. 633 Third Assocs.,* 14 F.3d 114, 119 (2d Cir. 1994). With this principle in mind, the Court deems it noteworthy that the Committee Report prepared in connection with the Anti–SLAPP Act emphasizes that the law was designed to "follow[ ] the model set forth in a number of other jurisdictions," Comm. Report at 1, and that the D.C. Court of Appeals often accords significant weight to such reports, *see, e.g., District of Columbia v. Place,* 892 A.2d 1108, 1113–15 (D.C. 2006) ("[W]e must look to the legislative history of the statute so that we may interpret the relevant provision in a way that is more faithful to the purpose than to the word.") (internal citations omitted). "Where appropriate, then, the Court will look to decisions from other jurisdictions (particularly those from California, which has a well-developed body of anti-SLAPP jurisprudence) for guidance in predicting how the D.C. Court of Appeals would interpret its own anti-SLAPP law." *Boley*, 950 F. Supp. 2d at 254-55.

## C. Prima Facie Showing of Protected Activity

For Defendants' motion to prevail, they must initially make a "prima facie showing that the claim at issue arises from an act in furtherance of the right of advocacy on issues of public interest." D.C. Code § 16–5502(b). The Act defines an "[a]ct in furtherance of the right of advocacy on issues of public interest" to include:

(A) Any written or oral statement made:

9

(i) In connection with an issue under consideration or review by a legislative, executive, *or judicial body*, or any other official proceeding authorized by law; or
(ii) In a place open to the public or a public forum in connection with an issue of public interest;

D.C. Code § 16–5501(1)(A, B) (emphasis added).

Defendants have made a prima facie showing that their allegedly defamatory statements are protected under the Anti-SLAPP Act. Bailey's statements about Forras and Klayman were made in Bailey's Motion to Dismiss the pending action before the Supreme Court of the State of New York, New York County. Therefore, Bailey's statements qualify as "written…statement[s] made…[i]n connection with an issue under consideration or review by a…judicial body." D.C. Code § 16–5501(1)(A).

**D. Likelihood of Success on the Merits**

Because defendants have made a prima facie showing that Plaintiffs' claim "arises from an act in furtherance of the right of advocacy on issues of public interest," Plaintiffs must now show that they are "likely to succeed on the merits" of their claim in order to survive Defendants' Anti-SLAPP motion. D.C. Code § 16–5502(b).

The Anti-SLAPP Act does not define the required showing for likelihood of succeed on the merits, so the Court looks to relevant case law from other jurisdictions as instructive. The 9th Circuit precedent case law is instructive. In order to show a "probability of prevailing on a claim" in opposition to an Anti–SLAPP motion to dismiss, a plaintiff "must satisfy a standard comparable to that used on a motion for judgment as a matter of law." *Abbas*, 2013 WL 5410410 *7 (citing *Price v. Stossel*, 620 F.3d 992, 1000 (9th Cir. 2010); *Arenas v. Shed Media U.S. Inc*., 881 F. Supp. 2d 1181, 1188 (C.D. Cal. 2011)). Thus, a plaintiff "must demonstrate that the

10

complaint is legally sufficient and supported by a prima facie showing of facts to sustain a

favorable judgment if the evidence submitted by the plaintiff is credited." *Price*, 620 F.3d at

1000 (internal citations omitted). If a "plaintiff fails to present a sufficient legal basis for the

claims or if the evidence offered is insufficiently substantial to support a judgment in favor of the

plaintiff, then the defendant's anti-SLAPP motion should be granted." *Arenas*, 881 F. Supp. 2d at

1188 (internal citations omitted).

### 1. Defamation and False Light Claims

To prevail on a claim for defamation under District of Columbia law, a plaintiff must

prove four elements:

> (1) that the defendant made a false and defamatory statement concerning the plaintiff; (2) that the defendant published the statement without privilege to a third party; (3) that the defendant's fault in publishing the statement amounted to at least negligence; and (4) either that the statement was actionable as a matter of law irrespective of special harm or that its publication caused the plaintiff special harm.

*Blodgett v. Univ. Club*, 930 A.2d 210, 222 (D.C. 2007).

Similarly, a false light claim under District of Columbia law requires a showing

of:

> (1) publicity (2) about a false statement, representation or imputation (3) understood to be of and concerning the plaintiff, and (4) which places the plaintiff in a false light that would be offensive to a reasonable person."

*Kitt v. Capital Concerts, Inc*., 742 A.2d 856, 859 (D.C. 1999).

"[W]here the plaintiff rests both his defamation and false light claims on the same

allegations…the claims will be analyzed in the same manner." *Stovell v. James*, 965 F. Supp. 2d

97 (D.D.C. 2013) (citing *Blodgett*, 930 A.2d at 222). Plaintiffs' defamation and false light claims

11

are both based on Bailey's statements in the New York Action Motion to Dismiss and will therefore be analyzed together.

Defendants contend Bailey's statements are protected from defamation and false light claims by the judicial proceedings privilege. Mot. to Dismiss at 15. In this jurisdiction, an attorney is protected by an absolute privilege to publish statements that may be false and defamatory if: (1) the statements are made in the course of, or preliminary to, a judicial proceeding; and (2) the statements are in some way related to the underlying proceeding. *Mohler v. Houston*, 356 A.2d 646, 647 (D.C. 1976) *(per curiam)*; *see* Restatement (Second) of Torts § 586 (1977). The privilege affords an attorney absolute immunity from actions in defamation for communications related to judicial proceedings. *Sturdivant v. Seaboard Serv. Sys., Ltd.*, 459 A.2d 1058 (D.C. 1983). The determination of whether a communication is privileged is a question of law for the court. *Mosrie v. Trussell*, 467 A.2d 475, 477 (D.C. 1983); *Alfred A. Altimont, Inc. v. Chatelain, Samperton & Nolan*, 374 A.2d 284, 290 (D.C. 1977).

In *Arneja v. Gildar* a landlord's attorney made the following statements to a tenant's attorney while both parties and clients were present in hearing room awaiting the imminent arrival of a hearing examiner to adjudicate their dispute:

> You're unnecessarily pursuing this case. You don't understand the law. Where did you go to law school; you should go back to law school before you practice law. You don't understand. You better learn your English, go to elementary school.

*Arneja v. Gildar*, 541 A.2d 621, 622 (D.C. 1988).

The court held that the statements by the landlord's attorney were protected by the judicial proceedings privilege because they (1) "[had] been made…preliminary to a judicial proceeding," and (2) "related in some way to the underlying proceeding" because they were

12

intended to "induce [the tenant's attorney] to cease the litigation by highlighting his supposed incredulous position." *Id.*

This Court rules that Defendants' statements in this case are protected by the judicial proceedings privilege. First, the statements were made in the course of a judicial proceeding. They were contained in Defendants' motion to dismiss the New York Action. The statements related to the underlying proceeding since they represented Defendants' attempts to highlight Plaintiffs' allegedly frivolous position. Defendants' motion to dismiss centered on the fact that Plaintiffs had failed to plead any cognizable cause of action, and that the action was brought exclusively because Plaintiffs had or have an aversion towards Islam. Mot. to Dismiss at 15. In addition, Justice Billings, in dismissing Plaintiffs' sanctions motion in the New York Action, found that the Defendants' "controversial statements" were "related to their litigation" and thus not a basis for sanctions. Bailey Dec., Exhibit 1. While this Court does not wish to be understood as condoning Defendants' statements, "the immunity of the absolute privilege supports the public policy of allowing counsel to zealously represent a client's interests without fear of reprisal through defamation actions." *Arneja*, 541 A.2d at 624. Because Defendants' statements qualify under the judicial proceedings privilege, Plaintiffs fail to demonstrate that their defamation and false light claims are likely to succeed on the merits.

**2. Assault Claim**

In the District of Columbia, defendants are subject to liability for assault if "(a) they act intending to cause a harmful or offensive contact…or an imminent apprehension of such a contact, and (b) the other party is thereby put in such imminent apprehension." *Acosta Orellana v. CropLife Int'l*, 711 F. Supp. 2d 81, 92 (D.D.C. 2010) (quoting *Rogers v. Loews L'Enfant Plaza*

13

*Hotel,* 526 F. Supp. 523, 529 (D.D.C. 1981)) (internal citations omitted). An actor will not be held liable for assault for negligent or reckless behavior lacking the requisite intent to commit an assault. *See Jackson v. District of Columbia,* 412 A.2d 948, 955 n. 15 (D.C. 1980). Also, "an essential element of ... assault is…intentional[ly] putting another in apprehension" and absent such an allegation a complaint is "clearly deficient." *See Madden v. D.C. Transit Sys., Inc.*, 307 A.2d 756, 757 (D.C. 1973) (*per curiam*) (holding that a plaintiff who alleged he was assaulted by fumes and offensive oily substances discharged from two of the defendant's passing buses did not meet the elements of assault).

Plaintiffs allege that because Defendants' statements were read by "radical Muslims," Defendants put a de facto Fatwah on Plaintiffs" and that Plaintiffs now fear for their safety. Compl. ¶¶ 23-24. However, Defendants' privileged statements, while uncomplimentary of Plaintiffs, are too attenuated to amount to an assault. Despite Plaintiffs' allegations to the contrary, they are unable to show that Defendants intended to harm them, or that Defendants' statements were threats. *See Madden*, 307 A.2d at 757. Accordingly, Plaintiffs fail to demonstrate that their assault claim is likely to succeed on the merits.

**3. Intentional Infliction of Emotional Distress Claim**

"To establish a claim for intentional infliction of emotional distress, a plaintiff must prove that the defendant engaged in: (1) extreme and outrageous conduct that (2) intentionally or recklessly caused (3) severe emotional distress to another." *Jung v. Jung*, 791 A.2d 46, 50 (D.C. 2002) (quoting *Jonathan Woodner Co. v. Breeden,* 665 A.2d 929, 934–35 (D.C. 1995)) (holding that appellee's suggestion that the parties in a real estate dispute "fight till the death" was a metaphor and did not rise to the level of intentional infliction of emotional distress).

14

The first element of the tort is satisfied only when the conduct at issue is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Homan v. Goyal*, 711 A.2d 812, 818 (D.C. 1998) (internal citation omitted). Liability "clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." Restatement (Second) of Torts § 46 cmt. d (1965). In determining whether specific acts rise to the extreme and outrageous level, courts are guided by "(1) applicable contemporary community standards of offensiveness and decency, and (2) the specific context in which the conduct took place." *King v. Kidd*, 640 A.2d 656, 668 (D.C.1993)."

Defendants' statements do not rise to the extreme and outrageous level. Under contemporary community standards, the statements are best characterized as "mere insults," especially given the context of the statements, that is, during the course of an adversarial proceeding. *See Jung*, 791 A.2d at 50. Accordingly, Plaintiffs fail to demonstrate that their intentional infliction of emotion distress claim is likely to succeed on the merits.

## III. STATUTE OF LIMITATIONS

Under D.C. Code § 12-301(4), the statute of limitations for defamation and assault are expressly set at one year, and under the "single publication" rule, defamation-based claims accrue on the date the allegedly defamatory statements were first published. *Mullin v. Washington Free Weekly, Inc.*, 785 A.2d 296, 298 (D.C. 2001). Although false light and intentional infliction of emotional distress are not expressly mentioned in D.C. Code § 12-301(4), the D.C. courts hold that when such claims are "intertwined" with defamation claims,

15

they share the one year statute of limitations. *Bond v. U.S. Department of Justice*, 828 F. Supp. 2d 60, 78 (D.D.C. 2011).

Plaintiffs filed their initial complaint in this Court on February 21, 2012. The New York Post article was published on October 12, 2010. Plaintiffs' claims have therefore accrued and are time-barred by the one-year statute of limitations.

Plaintiffs argue that their claims are not time-barred by the statute of limitations. They argue that under the "relation back" doctrine, the statute of limitations has not run because the D.C. Superior Court Action was commenced on October 12, 2011, which is in satisfaction of the one-year statute of limitations. Plaintiffs are incorrect. "The relation back doctrine has application only in instances where an original pleading is amended... The amendment does not, however, relate back to any prior proceedings which are not part of the action in question...." *Monrouzeau v. Asociacion del Maestro*, 354 F. Supp. 2d 115, 118 (D.P.R. 2005) (quoting *Rayo v. State of New York*, 882 F. Supp. 37, 40 (N.D.N.Y.1995)) *aff'd sub nom. Monrouzeau v. Asociacion Del Hosp. Del Maestro, Inc*., 153 F. App'x 7 (1st Cir. 2005). The D.C. Superior Court Action is a prior proceeding. Therefore, Plaintiffs' claims before this Court cannot relate back, and the one-year statute of limitations has run.


## IV. ATTORNEYS' FEES

Defendants requests attorney's fees in this action as well as fees incurred in the D.C. Superior Court Action, pursuant to D.C. Code § 16-5504(a). The Anti-SLAPP Act establishes that a court may award a moving party who prevails, in whole or in part, on a motion brought under D.C. Code § 16-5502 [Special Motion to Dismiss] or D.C. Code § 16-5503 [Special Motion to Quash] the costs of litigation, including reasonable attorney fees." D.C. Code § 16-

16

5504(a). While Defendants have addressed their request for attorney's fees in their brief,

Defendants have not cited any cases in support of the proposition that a court may award

attorney's fees for actions brought in other courts.

Defendants shall file documentation in support of their motion for attorney's fees no later

than May 9, 2014. The Court will retain jurisdiction to consider the motion for attorney's fees.

Plaintiffs shall file their opposition to Defendants' motion for attorney's fees no later than May

23, 2014. Defendants shall file their reply by May 30, 2014.

## V. CONCLUSION

For the foregoing reasons, the Court concludes that Defendants have made a prima facie

showing that Plaintiffs' claims arise from an act in furtherance of the right of advocacy on issues

of public interest, and that Plaintiffs have failed to demonstrate a likelihood of success on the

merits of their defamation, false light, assault, and intentional infliction of emotional distress

claims. Accordingly, Defendants' special motion to dismiss pursuant to the Anti-SLAPP Act is

GRANTED and Plaintiffs' complaint is DISMISSED.

An appropriate Order accompanies this Memorandum Opinion.

April 18, 2014

_Barbara J. Rothstein_

_____

BARBARA J.  ROTHSTEIN
UNITED STATES DISTRICT JUDGE

17

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

VINCENT FORRAS, *et al.*,                     )
                                              )
                  Plaintiffs,                 )       CIVIL ACTION NO. 12-00282 (BJR)
                                              )
        v.                                    )
                                              )       MEMORANDUM OPINION
IMAM FEISAL ABDUL RAUF, *et al.*              )       GRANTING DEFENDANTS'
                                              )       SPECIAL MOTION TO DISMISS
                                              )
                  Defendants.                 )
_____)

        Plaintiffs Larry Klayman and Vincent Forras bring this action against Defendants Imam

Feisal Abdul Rauf and Adam Leitman Bailey to recover damages for defamation, false light,

assault, and intentional infliction of emotional distress. Before the Court is Defendants' motion

to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1), (2), (3) and (6), and special

motion to dismiss under the District of Columbia Anti-Strategic Lawsuits Against Public

Participation Act of 2010 (the "Anti-SLAPP Act"), D.C. Code § 16-5501-5505. Defendants'

Memorandum of Law in Support of Motion to Dismiss and For Attorneys' Fees (hereinafter

"Mot. to Dismiss") at 3. Upon careful consideration of the parties briefs, submissions, and

exhibits, the Court concludes for the following reasons that Defendants' special motion to

dismiss must be granted.


## I. BACKGROUND

        This litigation springs out of the efforts of Imam Rauf and members of the Islamic

community in New York City to build an Islamic community center on Park Place in lower

1

Manhattan, several blocks away from the site of the tragic destruction of the World Trade Center

in the September 11, 2001 attacks. Complaint ("Compl.") ¶¶ 3, 4.


## A. Plaintiffs' New York Supreme Court Action

On September 9, 2010, Plaintiff Forras, through his attorney Plaintiff Klayman, brought

an action in the Supreme Court of the State of New York, New York County against Defendant

Imam Rauf, alleging that Rauf's plan to construct the community center constituted nuisance,

intentional and negligent infliction of emotional distress, and assault. *See Forras v. Rauf*, No.

111970/2010, 2012 WL 7986872 (N.Y. Sup. Ct. Sept. 26, 2012) (the "New York Action").

Defendant Bailey represented Rauf.

Forras claims to have been a "first responder" to the terrorist attacks of September 11,

2001 and has made himself an outspoken public advocate on issues regarding the September 11

attacks, personally and through an organization he founded, the Gear Up Foundation. Compl. ¶

7.

Klayman is a "publically known civil rights and individual rights activist." *Id.* Personally

and through an organization he founded, Freedom Watch, he engages in political commentary

and institutes litigation on behalf of causes he advocates. *Id.* ¶ 2.

On October 7, 2010, Rauf (through his attorney, Bailey) filed a motion to dismiss the

New York Action. The "Memorandum of Law in Support of Motion to Dismiss" stated in

pertinent part:

> "Plaintiff's attorney, an infamous publicity hound, has found in Plaintiff the
> perfect victim, a man who could have comfortably concluded his life as a national
> hero, as [a] self-described 'first responder' to the greatest national tragedy since
> Pearl Harbor. Instead, thanks to this wholly frivolous lawsuit, he trades in his well
> deserved laurels for fifteen minutes of fame as a nationally recognized bigot."

2

"His cause and his case have all the rationality of one who would seek to tear down New York City's Chinatown as vengeance for Pearl Harbor on the theory that all Asians are alike."

"Plaintiff's view is simple. According to him, Islam equates with terrorism…."

"Yet because [] Plaintiff's revulsion for one particular religion has so poisoned his mind, he claims the right to use the power of the court…."

"He has elected to transform himself from America's poster child hero to America's Spokesman of Bigotry…"

"That the plaintiff in this suit finds Islam unacceptable to him personally is simply irrelevant to the protection which Islam is entitled under the First Amendment…"

"… we find that Plaintiff has nothing to offer but his bigoted assumption that all Muslims approve terrorism…"

*Id*. ¶ 9. Bailey submitted an affidavit in the New York Action, which stated:

"I am an American and profoundly proud to be a citizen of the greatest most diversely embracing nation the planet earth has ever had in all of its recorded history."

"I am a Jew and profoundly proud to adhere to the nation that brought to Western Civilization the commands to love one's neighbor as oneself and not to oppress the foreigner for we were once strangers in another land."

"I will not let the right to the free exercise of religion be confined by narrowness of vision and I will not let the right to erect a house of prayer to be torn down by blind bigotry."

"When in the days following an analogous atrocity in 1941 our people marshaled their will and marched off, nobody was an American of this type. We were all united under a single banner pledged to eradicate the very kind of religious intolerance we see in Plaintiff, represented in those years by the Third Reich and those aligned with it."

*Id*. ¶ 10.

On October 12, 2010, the New York Post reported on the motion to dismiss in an article

entitled "*Anti-Mosque Lawsuit Slammed as Bigotry*." *Id.* ¶ 11; Annie Karni, *Anti-Mosque*

*Lawsuit Slammed as Bigotry*, N.Y. Post, Oct. 12, 2010. The article quoted the Defendants'

3

statement in their dismissal motion that the New York Action was "motivated by 'blind bigotry.'" Affidavit of Larry Klayman in Support of Plaintiff's Opposition to Defendants' Motion to Dismiss and For Attorneys Fees, Exhibit 1.

On January 2, 2011, Klayman cross-motioned for sanctions, objecting to the language of the dismissal motion and citing the New York Post article. On April 5, 2011, the Honorable Lucy Billings orally denied the sanctions motion because Defendants' "controversial statements" were "related to their litigation." Declaration of Adam Leitman Bailey in Support of Defendant's Motion to Dismiss and for Attorneys' Fees (hereinafter "Bailey Dec."), Exhibit 5.

On September 26, 2012, Justice Billings granted Defendants' motion to dismiss the action for failure to state a claim. *Forras*, 2012 WL 7986872.


## B. Plaintiffs' D.C. Superior Court Action

On October 11, 2011—after the court in the New York Action orally denied Klayman's motion for sanctions, but before the court granted Defendants' motion for dismissal—Klayman and Forras filed a complaint against Rauf and Bailey in the District of Columbia Superior Court. *See Vincent Forras & Larry Klayman v. Iman Feisal Abdul Rauf & Adam Leitman Bailey*, 2011 CA 0008122 B (D.C. Super. Aug. 7, 2012) (the "D.C. Superior Court Action"). Forras and Klayman sought to recover damages for defamation, false light, assault, and intentional infliction of emotional distress stemming from the statements Defendants made in their motion to dismiss the New York Action, and the subsequent partial publication of those statements in the New York Post. Declaration of Christopher G. Hoge in Support of Defendant's Motion to Dismiss and For Attorneys' Fees, Exhibit 2.

4

On February 21, 2012, Plaintiffs, after having been granted three extensions of time by the Superior Court, commenced the present action in this Court and filed a Notice of Dismissal in the Superior Court. *Id.*, Exhibit 5. Plaintiffs explained that they wanted to take advantage of a recent federal court decision, *3M v. Boulter*, 842 F. Supp. 2d 85, 93-111 (D.D.C. 2012), which declined to apply the Anti-SLAPP Act to federal diversity cases. *Id.*

## C. The Present Action

Plaintiffs' Complaint in the instant case is identical in substance to the D.C. Superior Court Action complaint. Plaintiffs allege defamation, false light, assault, and intentional infliction of emotional distress stemming from the statements Defendants made in their motion to dismiss the New York Action, and the subsequent partial publication of those statements in the New York Post. Compl. ¶¶ 1, 8-10.

Defendants present a mélange of reasons why this case should be dismissed. They have filed a motion to dismiss under Rules 12(b)(1), (2), (3) and (6) and a special motion to dismiss under the Anti-SLAPP Act, which authorizes dismissal where a defendant shows that the claims at issue arise from an act in furtherance of the right of advocacy on issues of public interest.[1] The Court will resist the temptation to deal with all of Defendants arguments and will instead focus on Defendants' Anti-SLAPP Act and statute of limitations arguments. Mot. to Dismiss at 3. Because the Anti–SLAPP Act instructs courts to address special motions to dismiss on an expedited basis, *see* D.C. Code § 16–5502(d), the Court gives that motion priority and will address it first.

---

[1] Although D.C. Code § 16-5502 provides that a special motion to dismiss should be filed within forty-five days of the service of the claim, here Defendants moved promptly to stay this action because of the pendency of the Superior Court Action. As such, considering the circumstances under which the action was brought, the time to file the special motion to dismiss is equitably tolled and this motion is considered timely.

5

## II. SPECIAL MOTION TO DISMISS UNDER THE ANTI-SLAAP ACT

### A. Applicability of the Anti–SLAPP Act in Federal Diversity Actions

As a threshold matter, Plaintiffs argue that the Anti–SLAPP Act's special motion to dismiss provisions do not apply in federal proceedings where, as here, the court's jurisdiction is based on diversity. *See Erie v. Tompkins*, 304 U.S. 64, 58 (1938) (federal courts sitting in diversity must apply state substantive laws and federal procedural laws); *see also* Compl. ¶ 1 (invoking the Court's diversity jurisdiction). Plaintiffs rely exclusively on *3M Co. v. Boulter*. In that case the Court held that the Anti–SLAPP Act "squarely attempts to answer the same question that [Federal Rules of Civil Procedure] 12 and 56 cover and, therefore, cannot be applied in a federal court sitting in diversity." 842 F. Supp. 2d 85, 102 (D.D.C. 2012) (Wilkins, J.).

While thoroughly reasoned, *3M Co.* conflicts with the weight of authority. Indeed, three Courts of Appeals have deemed it appropriate to enforce state anti-SLAPP laws in diversity actions, finding no conflict between those statutes' special motion to dismiss provisions and Federal Rules of Civil Procedure 12 and 56. *See Godin v. Schencks,* 629 F.3d 79, 81 (1st Cir. 2010); *U.S. ex rel. Newsham v. Lockheed Missiles & Space Co.,* 190 F.3d 963, 973 (9th Cir. 1999); *Henry v. Lake Charles Am. Press, LLC,* 566 F.3d 164, 169 (5th Cir. 2009) (summarily adopting *Newsham's* reasoning).

In *Sherrod v. Breitbart*, a D.C. District Court case decided after *3M Co.*, the court held that the Anti-SLAPP Act "is substantive—or at the very least, has substantive consequences" and thus is applicable in federal court. 843 F. Supp. 2d 83, 85 (D.D.C. 2012) (Leon, J.) *aff'd on other grounds* 720 F.3d 932 (D.C. Cir. 2013). In *Sherrod*, the plaintiff—former Georgia State Director

6

for Rural Development for the United States Department of Agriculture— brought an action against the defendants—Internet bloggers Andrew Breitbart and Larry O'Connor—asserting claims for defamation, false light, and intentional infliction of emotional distress, which the defendants moved to dismiss under the Anti–SLAPP Act. *Sherrod*, 843 F. Supp. 2d at 83-84. The Honorable Judge Leon examined the legislative history of the Anti-SLAPP Act and found that the intent was "to create new substantive rights for defendants in SLAPP suits." *Id.* at 85. "'Bill 18–893, the Anti–SLAPP of 2010, incorporates substantive rights with regard to a defendant's ability to fend off lawsuits filed by one side of a political or public policy debate aimed to punish or prevent the expression of opposing points of view.'" *Id.* (quoting Council on the District of Columbia Committee on Public Safety and the Judiciary, Report on Bill 18–893, Anti–SLAPP Act of 2010 (Nov. 18, 2010) ("Comm. Report") at 1). In addition, since *3M Co.* three other D.C. District Court judges have found that the Anti-SLAPP Act applies to diversity actions in federal court. *See Boley v. Atl. Monthly Grp.,* 950 F. Supp. 2d 249, 254 (D.D.C. 2013) (Walton, J.) (finding the Courts of Appeals cases persuasive and adopting their reasoning); *Farah v. Esquire Magazine, Inc.,* 863 F. Supp. 2d 29, 36  n. 10 (D.D.C. 2012) (Collyer, J.) *aff'd sub nom. Farah v. Esquire Magazine,* 736 F.3d 528 (D.C. Cir. 2013) ("it was certainly the intent of the D.C. Council and the effect of the law—dismissal on the merits—to have substantive consequences"); *Abbas v. Foreign Policy Grp., LLC*, CV 12-1565 (EGS), 2013 WL 5410410 *5 (D.D.C. Sept. 27, 2013) (Sullivan, J.) (same).

Finding the Courts of Appeals cases and the recent D.C. District Court cases persuasive, the Court concludes that the Anti-SLAPP Act empowers defendants with the substantive right to fend off SLAPP lawsuits. Therefore the Court will apply the Anti-SLAPP Act's special motion to dismiss provisions in this case.

7

**B. The Anti-SLAPP Act**

The subsection of the Anti–SLAPP Act governing special motions to dismiss provides in

pertinent part:

> (a) A party may file a special motion to dismiss any claim arising from an act in furtherance of the right of advocacy on issues of public interest within 45 days after service of the claim.
>
> (b) If a party filing a special motion to dismiss under this section makes a prima facie showing that the claim at issue arises from an act in furtherance of the right of advocacy on issues of public interest, then the motion shall be granted unless the responding party demonstrates that the claim is likely to succeed on the merits, in which case the motion shall be denied.

D.C.Code § 16–5502(a)–(b).

The "broad" protections afforded by the Act "follow[ ] 'the lead of other jurisdictions,

which have similarly extended absolute or qualified immunity to individuals engaged in

protected actions'" by enacting anti-SLAPP laws. *Farah,* 863 F. Supp. 2d at 36 (quoting the

Comm. Report at 4). These statutes, like the District of Columbia's Anti–SLAPP Act, reflect a

legislative judgment that

> SLAPPs ... have been increasingly utilized over the past two decades as a means to muzzle speech or efforts to petition the government on issues of public interest. Such cases are often without merit, but achieve their filer's intention of punishing or preventing opposing points of view, resulting in a chilling effect on the exercise of constitutionally protected rights. Further, defendants of a SLAPP must dedicate a substantial amount of money, time, and legal resources. The impact is not limited to named defendants' willingness to speak out, but prevents others from voicing concerns as well.

*Boley*, 950 F. Supp. 2d at 255 (quoting Comm. Report at 1) (internal citations omitted).

The Anti–SLAPP Act seeks to address these concerns "by incorporating substantive

rights that allow a defendant to more expeditiously, and more equitably, dispense of a SLAPP."

Comm. Report at 1.

8

In construing the Anti–SLAPP Act, this Court unfortunately has no guidance from the

D.C. Court of Appeals, which, to date, has not issued a published opinion interpreting the statute.

Where, as here, "the substantive law of the forum state is uncertain or ambiguous, the job of the

federal courts is carefully to predict how the highest court of the forum state would resolve the

uncertainty or ambiguity." *Travelers Ins. Co. v. 633 Third Assocs.,* 14 F.3d 114, 119 (2d Cir.

1994). With this principle in mind, the Court deems it noteworthy that the Committee Report

prepared in connection with the Anti–SLAPP Act emphasizes that the law was designed to

"follow[ ] the model set forth in a number of other jurisdictions," Comm. Report at 1, and that

the D.C. Court of Appeals often accords significant weight to such reports, *see, e.g., District of

Columbia v. Place,* 892 A.2d 1108, 1113–15 (D.C. 2006) ("[W]e must look to the legislative

history of the statute so that we may interpret the relevant provision in a way that is more faithful

to the purpose than to the word.") (internal citations omitted). "Where appropriate, then, the

Court will look to decisions from other jurisdictions (particularly those from California, which

has a well-developed body of anti-SLAPP jurisprudence) for guidance in predicting how the

D.C. Court of Appeals would interpret its own anti-SLAPP law." *Boley*, 950 F. Supp. 2d at 254-

55.

## C. Prima Facie Showing of Protected Activity

For Defendants' motion to prevail, they must initially make a "prima facie showing that

the claim at issue arises from an act in furtherance of the right of advocacy on issues of public

interest." D.C. Code § 16–5502(b). The Act defines an "[a]ct in furtherance of the right of

advocacy on issues of public interest" to include:

(A) Any written or oral statement made:

9

(i) In connection with an issue under consideration or review by a legislative, executive, *or judicial body*, or any other official proceeding authorized by law; or
(ii) In a place open to the public or a public forum in connection with an issue of public interest;

D.C. Code § 16–5501(1)(A, B) (emphasis added).

Defendants have made a prima facie showing that their allegedly defamatory statements are protected under the Anti-SLAPP Act. Bailey's statements about Forras and Klayman were made in Bailey's Motion to Dismiss the pending action before the Supreme Court of the State of New York, New York County. Therefore, Bailey's statements qualify as "written…statement[s] made…[i]n connection with an issue under consideration or review by a…judicial body." D.C. Code § 16–5501(1)(A).

## D. Likelihood of Success on the Merits

Because defendants have made a prima facie showing that Plaintiffs' claim "arises from an act in furtherance of the right of advocacy on issues of public interest," Plaintiffs must now show that they are "likely to succeed on the merits" of their claim in order to survive Defendants' Anti-SLAPP motion. D.C. Code § 16–5502(b).

The Anti-SLAPP Act does not define the required showing for likelihood of succeed on the merits, so the Court looks to relevant case law from other jurisdictions as instructive. The 9th Circuit precedent case law is instructive. In order to show a "probability of prevailing on a claim" in opposition to an Anti–SLAPP motion to dismiss, a plaintiff "must satisfy a standard comparable to that used on a motion for judgment as a matter of law." *Abbas*, 2013 WL 5410410 *7 (citing *Price v. Stossel*, 620 F.3d 992, 1000 (9th Cir. 2010); *Arenas v. Shed Media U.S. Inc.*, 881 F. Supp. 2d 1181, 1188 (C.D. Cal. 2011)). Thus, a plaintiff "must demonstrate that the

10

complaint is legally sufficient and supported by a prima facie showing of facts to sustain a

favorable judgment if the evidence submitted by the plaintiff is credited." *Price*, 620 F.3d at

1000 (internal citations omitted). If a "plaintiff fails to present a sufficient legal basis for the

claims or if the evidence offered is insufficiently substantial to support a judgment in favor of the

plaintiff, then the defendant's anti-SLAPP motion should be granted." *Arenas*, 881 F. Supp. 2d at

1188 (internal citations omitted).

## 1. Defamation and False Light Claims

To prevail on a claim for defamation under District of Columbia law, a plaintiff must

prove four elements:

> (1) that the defendant made a false and defamatory statement concerning the plaintiff; (2) that the defendant published the statement without privilege to a third party; (3) that the defendant's fault in publishing the statement amounted to at least negligence; and (4) either that the statement was actionable as a matter of law irrespective of special harm or that its publication caused the plaintiff special harm.

*Blodgett v. Univ. Club*, 930 A.2d 210, 222 (D.C. 2007).

Similarly, a false light claim under District of Columbia law requires a showing

of:

> (1) publicity (2) about a false statement, representation or imputation (3) understood to be of and concerning the plaintiff, and (4) which places the plaintiff in a false light that would be offensive to a reasonable person."

*Kitt v. Capital Concerts, Inc.*, 742 A.2d 856, 859 (D.C. 1999).

"[W]here the plaintiff rests both his defamation and false light claims on the same

allegations…the claims will be analyzed in the same manner." *Stovell v. James*, 965 F. Supp. 2d

97 (D.D.C. 2013) (citing *Blodgett*, 930 A.2d at 222). Plaintiffs' defamation and false light claims

11

are both based on Bailey's statements in the New York Action Motion to Dismiss and will therefore be analyzed together.

Defendants contend Bailey's statements are protected from defamation and false light claims by the judicial proceedings privilege. Mot. to Dismiss at 15. In this jurisdiction, an attorney is protected by an absolute privilege to publish statements that may be false and defamatory if: (1) the statements are made in the course of, or preliminary to, a judicial proceeding; and (2) the statements are in some way related to the underlying proceeding. *Mohler v. Houston*, 356 A.2d 646, 647 (D.C. 1976) *(per curiam)*; *see* Restatement (Second) of Torts § 586 (1977). The privilege affords an attorney absolute immunity from actions in defamation for communications related to judicial proceedings. *Sturdivant v. Seaboard Serv. Sys., Ltd.*, 459 A.2d 1058 (D.C. 1983). The determination of whether a communication is privileged is a question of law for the court. *Mosrie v. Trussell*, 467 A.2d 475, 477 (D.C. 1983); *Alfred A. Altimont, Inc. v. Chatelain, Samperton & Nolan*, 374 A.2d 284, 290 (D.C. 1977).

In *Arneja v. Gildar* a landlord's attorney made the following statements to a tenant's attorney while both parties and clients were present in hearing room awaiting the imminent arrival of a hearing examiner to adjudicate their dispute:

> You're unnecessarily pursuing this case. You don't understand the law. Where did you go to law school; you should go back to law school before you practice law. You don't understand. You better learn your English, go to elementary school.

*Arneja v. Gildar*, 541 A.2d 621, 622 (D.C. 1988).

The court held that the statements by the landlord's attorney were protected by the judicial proceedings privilege because they (1) "[had] been made…preliminary to a judicial proceeding," and (2) "related in some way to the underlying proceeding" because they were

12

intended to "induce [the tenant's attorney] to cease the litigation by highlighting his supposed incredulous position." *Id.*

This Court rules that Defendants' statements in this case are protected by the judicial proceedings privilege. First, the statements were made in the course of a judicial proceeding. They were contained in Defendants' motion to dismiss the New York Action. The statements related to the underlying proceeding since they represented Defendants' attempts to highlight Plaintiffs' allegedly frivolous position. Defendants' motion to dismiss centered on the fact that Plaintiffs had failed to plead any cognizable cause of action, and that the action was brought exclusively because Plaintiffs had or have an aversion towards Islam. Mot. to Dismiss at 15. In addition, Justice Billings, in dismissing Plaintiffs' sanctions motion in the New York Action, found that the Defendants' "controversial statements" were "related to their litigation" and thus not a basis for sanctions. Bailey Dec., Exhibit 1. While this Court does not wish to be understood as condoning Defendants' statements, "the immunity of the absolute privilege supports the public policy of allowing counsel to zealously represent a client's interests without fear of reprisal through defamation actions." *Arneja*, 541 A.2d at 624. Because Defendants' statements qualify under the judicial proceedings privilege, Plaintiffs fail to demonstrate that their defamation and false light claims are likely to succeed on the merits.

**2. Assault Claim**

In the District of Columbia, defendants are subject to liability for assault if "(a) they act intending to cause a harmful or offensive contact…or an imminent apprehension of such a contact, and (b) the other party is thereby put in such imminent apprehension." *Acosta Orellana v. CropLife Int'l*, 711 F. Supp. 2d 81, 92 (D.D.C. 2010) (quoting *Rogers v. Loews L'Enfant Plaza*

13

*Hotel,* 526 F. Supp. 523, 529 (D.D.C. 1981)) (internal citations omitted). An actor will not be

held liable for assault for negligent or reckless behavior lacking the requisite intent to commit an

assault. *See Jackson v. District of Columbia,* 412 A.2d 948, 955 n. 15 (D.C. 1980). Also, "an

essential element of ... assault is…intentional[ly] putting another in apprehension" and absent

such an allegation a complaint is "clearly deficient." *See Madden v. D.C. Transit Sys., Inc.*, 307

A.2d 756, 757 (D.C. 1973) (*per curiam*) (holding that a plaintiff who alleged he was assaulted by

fumes and offensive oily substances discharged from two of the defendant's passing buses did

not meet the elements of assault).

Plaintiffs allege that because Defendants' statements were read by "radical Muslims,"

Defendants put a de facto Fatwah on Plaintiffs" and that Plaintiffs now fear for their safety.

Compl. ¶¶ 23-24. However, Defendants' privileged statements, while uncomplimentary of

Plaintiffs, are too attenuated to amount to an assault. Despite Plaintiffs' allegations to the

contrary, they are unable to show that Defendants intended to harm them, or that Defendants'

statements were threats. *See Madden*, 307 A.2d at 757. Accordingly, Plaintiffs fail to

demonstrate that their assault claim is likely to succeed on the merits.

### 3. Intentional Infliction of Emotional Distress Claim

"To establish a claim for intentional infliction of emotional distress, a plaintiff must

prove that the defendant engaged in: (1) extreme and outrageous conduct that (2) intentionally or

recklessly caused (3) severe emotional distress to another." *Jung v. Jung*, 791 A.2d 46, 50 (D.C.

2002) (quoting *Jonathan Woodner Co. v. Breeden,* 665 A.2d 929, 934–35 (D.C. 1995)) (holding

that appellee's suggestion that the parties in a real estate dispute "fight till the death" was a

metaphor and did not rise to the level of intentional infliction of emotional distress).

14

The first element of the tort is satisfied only when the conduct at issue is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Homan v. Goyal*, 711 A.2d 812, 818 (D.C. 1998) (internal citation omitted). Liability "clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." Restatement (Second) of Torts § 46 cmt. d (1965). In determining whether specific acts rise to the extreme and outrageous level, courts are guided by "(1) applicable contemporary community standards of offensiveness and decency, and (2) the specific context in which the conduct took place." *King v. Kidd*, 640 A.2d 656, 668 (D.C.1993)."

Defendants' statements do not rise to the extreme and outrageous level. Under contemporary community standards, the statements are best characterized as "mere insults," especially given the context of the statements, that is, during the course of an adversarial proceeding. *See Jung*, 791 A.2d at 50. Accordingly, Plaintiffs fail to demonstrate that their intentional infliction of emotion distress claim is likely to succeed on the merits.

## III. STATUTE OF LIMITATIONS

Under D.C. Code § 12-301(4), the statute of limitations for defamation and assault are expressly set at one year, and under the "single publication" rule, defamation-based claims accrue on the date the allegedly defamatory statements were first published. *Mullin v. Washington Free Weekly, Inc.*, 785 A.2d 296, 298 (D.C. 2001). Although false light and intentional infliction of emotional distress are not expressly mentioned in D.C. Code § 12-301(4), the D.C. courts hold that when such claims are "intertwined" with defamation claims,

15

they share the one year statute of limitations. *Bond v. U.S. Department of Justice*, 828 F. Supp.

2d 60, 78 (D.D.C. 2011).

Plaintiffs filed their initial complaint in this Court on February 21, 2012. The New York

Post article was published on October 12, 2010. Plaintiffs' claims have therefore accrued and are

time-barred by the one-year statute of limitations.

Plaintiffs argue that their claims are not time-barred by the statute of limitations. They

argue that under the "relation back" doctrine, the statute of limitations has not run because the

D.C. Superior Court Action was commenced on October 12, 2011, which is in satisfaction of the

one-year statute of limitations. Plaintiffs are incorrect. "The relation back doctrine has

application only in instances where an original pleading is amended... The amendment does not,

however, relate back to any prior proceedings which are not part of the action in question...."

*Monrouzeau v. Asociacion del Maestro*, 354 F. Supp. 2d 115, 118 (D.P.R. 2005) (quoting *Rayo*

*v. State of New York*, 882 F. Supp. 37, 40 (N.D.N.Y.1995)) *aff'd sub nom. Monrouzeau v.*

*Asociacion Del Hosp. Del Maestro, Inc*., 153 F. App'x 7 (1st Cir. 2005). The D.C. Superior

Court Action is a prior proceeding. Therefore, Plaintiffs' claims before this Court cannot relate

back, and the one-year statute of limitations has run.


## IV. ATTORNEYS' FEES

Defendants requests attorney's fees in this action as well as fees incurred in the D.C.

Superior Court Action, pursuant to D.C. Code § 16-5504(a). The Anti-SLAPP Act establishes

that a court may award a moving party who prevails, in whole or in part, on a motion brought

under D.C. Code § 16-5502 [Special Motion to Dismiss] or D.C. Code § 16-5503 [Special

Motion to Quash] the costs of litigation, including reasonable attorney fees." D.C. Code § 16-

16

5504(a). While Defendants have addressed their request for attorney's fees in their brief,
Defendants have not cited any cases in support of the proposition that a court may award
attorney's fees for actions brought in other courts.

Defendants shall file documentation in support of their motion for attorney's fees no later
than May 9, 2014. The Court will retain jurisdiction to consider the motion for attorney's fees.
Plaintiffs shall file their opposition to Defendants' motion for attorney's fees no later than May
23, 2014. Defendants shall file their reply by May 30, 2014.

## V. CONCLUSION

For the foregoing reasons, the Court concludes that Defendants have made a prima facie
showing that Plaintiffs' claims arise from an act in furtherance of the right of advocacy on issues
of public interest, and that Plaintiffs have failed to demonstrate a likelihood of success on the
merits of their defamation, false light, assault, and intentional infliction of emotional distress
claims. Accordingly, Defendants' special motion to dismiss pursuant to the Anti-SLAPP Act is
GRANTED and Plaintiffs' complaint is DISMISSED.

An appropriate Order accompanies this Memorandum Opinion.

April 18, 2014

_____
BARBARA J.  ROTHSTEIN
UNITED STATES DISTRICT JUDGE

17

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

VINCENT FORRAS, *et al.*,                    )
                                             )
            Plaintiffs,                      )        CIVIL ACTION NO. 12-00282 (BJR)
                                             )
      v.                                     )
                                             )        ORDER AND JUDGMENT
IMAM FEISAL ABDUL RAUF, *et al.*             )
                                             )
                                             )
            Defendants.                      )
_____)

## ORDER AND JUDGMENT GRANTING DEFENDANTS' MOTION TO DISMISS [8]

For the reasons stated in the Court's Memorandum Opinion issued on this day, April 18,

2014, it is **HEREBY ORDERED** as follows:

(1) Defendants' Imam Feisal Abdul Rauf, *et al*. Motion to Dismiss [8] is **GRANTED**.

This case is **DISMISSED**.

(2) Defendants shall file documentation in support of their motion for attorney's fees no

later than May 9, 2014.

(3) Plaintiffs shall file their opposition to Defendants' motion for attorney's fees no later

than May 23, 2014.

(4) Defendants shall file their reply by May 30, 2014.

**SO ORDERED**

April 18, 2014

Barbara J. Rothstein

_____

BARBARA J. ROTHSTEIN

UNITED STATES DISTRICT JUDGE